IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| SAMMIE L. ROBERSON | § | |
| v. | § | CIVIL ACTION NO. 6:06cv508 |
| DIRECTOR, TDCJ-CID | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Petitioner Sammie Roberson, an inmate of the Texas Department of Criminal Justice, Institutional Division proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. §2254 complaining of the legality of his conviction.  The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c).

In his petition, Roberson says that he was convicted of burglary of a habitation in the 114th Judicial District Court of Smith County, Texas, receiving a sentence of life in prison.  The facts of the case, as stated by the Twelfth Judicial District Court of Appeals, were as follows:

> At trial, Nancy Alonso and her husband Edward testified that they own a house located in Tyler, Smith County, Texas. Nancy testified that, when she returned home for lunch on October 24, 2002, she observed a bucket beneath the window of her daughter's room. Medium-sized shearing scissors were located next to the bucket. Upon entering her bedroom, she noticed the room had been ransacked. A tin can used to hold Nancy's birthday and anniversary cards was open on the bottom mattress, and the cards were scattered. Nancy testified that she had owned this tin can about five years and that it was always kept on the top shelf of her closet. Nancy then checked the other rooms in the house. The double-paned window in her daughter's room was pulled down and the inner pane was broken. The front pane of the window, a screen, was missing and later found in the carport. The glass on the broken window pane was jagged and sharp-edged and appeared to be "punched out." Both Nancy and Edward testified that property belonging to both of them was missing from their house, including two VCRs, a DVD player, two cellular phones, Nancy's wedding ring with a round diamond, and a gold bracelet. Neither Nancy nor Edward had ever seen Appellant nor had they given him consent to enter their house or take their property.
>
> Officer Royce Jordan has been with the Tyler Police Department for eighteen years and is cross-trained to dust for fingerprints at a crime scene. On October 24, 2002,

1

Jordan responded to a call at the Alonsos' house. Jordan dusted around the edge of a tin can located in the Alonsos' bedroom for fingerprints and, ultimately, processed five fingerprint cards from outside and inside the can. Jordan attempted to fingerprint other items in the Alonsos' house, but was unable to locate any other usable fingerprints.

Investigator Jeffrey S. Rackliff, an officer with the Tyler Police Department, has been with the department almost twelve years. Currently, he is a crime scene investigator and his duties include, among others, the collection of fingerprints. In comparing fingerprints, the Tyler Police Department standard demands a minimum of seven points identical in both type and geographic location within the fingerprint pattern. According to Rackliff, if a competent, trained latent fingerprint examiner follows the model for comparing fingerprints correctly, the margin of error is zero.

In his opinion, only one fingerprint recovered from the crime scene was of sufficient quality or ridge detail for comparison. After submitting the one quality fingerprint to a fingerprint identification database, one fingerprint was received that Rackliff believed was a viable candidate-Appellant's. Based on this belief, Rackliff obtained Appellant's 1986 fingerprint card. The recovered fingerprint from the tin can had at least seven points of comparison with the left thumb print on Appellant's fingerprint card. On March 3, 2003, Rackliff fingerprinted Appellant and compared his fingerprints with the recovered fingerprint from the tin can. There were also seven points of identical comparison between the fingerprints. In his opinion, the fingerprint from the tin can belonged to Appellant. Further, Rackliff took one of Appellant's fingerprints from March 3 and compared it to Appellant's 1986 fingerprint card. In Rackliff's opinion, the 1986 fingerprint card also belonged to Appellant. Rackliff admitted that he had no information concerning how the fingerprint ended up on the tin can or how long it may have been in that location.

Sergeant Connie Castle has been a police officer with the Tyler Police Department for approximately eighteen years and is currently with the Crime Scene Unit. In verifying fingerprint findings, Castle begins the comparison anew in a separate, independent evaluation. In this case, Castle compared fingerprints that were lifted from the crime scene with rolled impressions. Castle verified Rackliff's findings in 2002 and in March of 2003. She found at least seven points of comparison between the 1986 fingerprint card and the fingerprint from the crime scene. She concluded that the fingerprint from the crime scene belonged to Appellant.

Roberson v. State, --- S.W.3d ---, slip op. no. 12-03-00110-CR (Tex.App.-Tyler 2005, no pet.).

Roberson pleaded not guilty but was found guilty by the jury. On direct appeal, he argued that the evidence was legally and factually insufficient to support his conviction and that the State engaged in improper jury argument by challenging him to explain why his fingerprints were found in the Alonso home. The Court of Appeals rejected his claims, and Roberson did not seek discretionary review from the Texas Court of Criminal Appeals. Instead, he filed a habeas corpus petition in state court. Hearings were held on this petition on January 19, 2006 and April 25, 2006.

Following these hearings, the Court of Criminal Appeals denied Roberson's state writ on June 21, 2006, based on the findings of the trial court. Roberson then sought federal habeas corpus relief.

In his petition, Roberson alleges that: (1) there was no evidence to support his conviction; (2) he was denied effective assistance of counsel in multiple ways; (3) the sentence was cruel and unusual punishment and unconstitutionally disproportionate to the offense; and (4) the State made an improper jury argument at trial. The Respondent has been ordered to answer Roberson's petition and has done so. Roberson did not file a response to the answer. His grounds for relief will be addressed in turn.

I. Sufficiency of the Evidence

In his first ground for relief, Roberson says that there was "not one scintilla" of evidence to support the verdict of guilty. He says that the only proof offered was the evidence of his fingerprints at the scene, and that there was no evidence linking him to the stolen property. Roberson notes that there was no evidence as to when his fingerprints were placed on the can and says that this evidence was "so weak as to be inherently wrong and manifestly unjust." Roberson further argues that the State's case was "a clear case of circumstantial evidence" and again says that it was so weak as to not support the verdict.

Roberson says that he has an affidavit from an individual named George Stockton, the person whom Roberson says actually committed the burglary. He says that this affidavit explains how and why Roberson's fingerprint was on the can, and insists that this affidavit is true and correct.

According to the affidavit, Stockton broke into Nancy Alonso's house, in the company of Nancy's brother David Daniel. Stockton says that Daniel broke out the window and he, Stockton, climbed in, and then opened the door for Daniel. They grabbed various items, including the tin box, and left. They went to Houston Street, and Daniel wanted to stop and buy some marijuana. They saw a black guy sitting on the porch smoking, and Daniel had Stockton stop the van. Stockton saw that the man had a tattoo of a star under his eye. Daniel then grabbed two stolen cell phones and the box, and got out. Stockton says that he stayed in the van, but saw Daniel hand the other man the

3

box.  They opened it and looked inside, where they saw some rings and coins.  The man gave the box back to Daniel and then looked at the cell phones.  Daniel then came back to the van and said that the man was not interested in the jewelry but would buy one of the cell phones if they could find the charger.  They returned to the Alonso house to try to find the charger.

Once at the house, the affidavit says, Daniel got out, taking the tin box with him.  He went into the house, using his key.  When he came back out, he had the jewelry and the battery charger, but not the box or coins; Stockton asked him about the coins, and Daniel replied that the coins meant a lot to his sister and he should not have taken them. They went back to where the man had been, but he was gone.

Later, Stockton says, he was arrested and wound up in the Allred Unit of TDCJ.  He met Roberson, whom he recognized immediately because of the tattoo of the star.  Roberson said that he was in prison for a crime which he did not do, a burglary of a house on Dawson Street, owned by a lady named Nancy Alonso.  Stockton asked him what was missing from the house, and Roberson said that his fingerprints had been found on a tin box.  Stockton says that he was "shocked" because he realized that this was the same house which he and Daniel had burglarized, and that Roberson's fingerprints were on the box because Daniel had handed it to him.

After Roberson presented this affidavit to the state habeas court, an evidentiary hearing was conducted.  At this hearing, Daniel testified that he did not break into the house, that he had never seen or met Roberson, that he did not remove a tin box from his sister's house or put it back, and that although he had served time in TDCJ he had never been to the Allred Unit.

Stockton testified at the habeas hearing, but was selective in the questions which he answered.  Although the State promised him immunity from testimony for perjury, Stockton pleaded the Fifth Amendment with respect to those questions he did not want to answer.  He did say that he was serving a life sentence for "20 to 30" burglaries, that the affidavit was true, and that he wrote the affidavit so that if Smith County authorities wanted to prosecute him for the burglary, it would

be all over by the time he came up for parole the next year.  However, Stockton refused to submit to cross-examination with regard to questions that he did not want to answer.

Roberson also testified at this hearing.  In his testimony, Roberson complained that his attorney, Melvin Thompson, only came to see him twice, and that Thompson made him promises which he did not keep, including promises to get a fingerprint expert and to get Roberson a psychiatric exam.  Roberson also testified to the circumstances set out in Stockton's affidavit, saying that he was just sitting on the porch smoking some marijuana when a van pulled up and a man got out and asked him for a cigarette.  Roberson replied that he was not smoking a cigarette and "let him hit the joint."  He says that the man gave him a tin box with coins in it to look at, and then he looked at some cell phones, and told the man that if he could get a battery charger, Roberson might be interested in one.

On cross-examination, Roberson acknowledged that at the punishment phase of his trial, he told the jury that he and he alone had committed the burglary, and that he took the property from the burglary and sold it at a crack house.  Nonetheless, he maintained at the hearing that the affidavit was true and that Stockton and Daniel, not he, had burglarized the house.

Following the hearing, the trial court found that Stockton's affidavit and testimony were not credible in any form, and that Roberson's testimony at the hearing was not credible and contradicted his judicial confession during the punishment phase of the trial.  The trial court found Daniel's testimony, denying any involvement in the crime, to be credible.

The Respondent contends that Roberson's claim regarding sufficiency of the evidence has been procedurally defaulted because he did not present it to the Texas Court of Criminal Appeals through a petition for discretionary review.  This contention is correct.

The Fifth Circuit has stated that under Texas law, a prisoner cannot seek habeas corpus review of a sufficiency of the evidence claim that was available but not raised on direct appeal. Kittelson v. Dretke, 426 F.3d 306, 317 n.26 (5th Cir. 2005).  This means that a claim of sufficiency of the evidence which was not raised on direct appeal in the state courts, but only through state

habeas, has been procedurally defaulted for purposes of federal habeas corpus review.  <u>West v. Johnson</u>, 92 F.3d 1385, 1398 n. 18 (5th Cir. 1996).  In this case, Roberson did not complete the direct review process because he did not seek discretionary review; thus, his claim regarding the sufficiency of the evidence was never presented in a procedurally proper manner to the Texas Court of Criminal Appeals.  For this reason the claim has been procedurally defaulted.

In addition, there was sufficient evidence to support the conviction.  The Fifth Circuit has stated that in reviewing the sufficiency of the evidence in the context of habeas corpus proceedings challenging the judgment of a state court, the federal courts' review is limited to determining whether, based upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  <u>Lucas v. Johnson</u>, 132 F.3d 1069, 1078 (5th Cir. 1998), <i>citing</i> <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 (1979).  The court's review of the evidence is conducted in the light most favorable to the verdict.  <u>Selvage v. Lynaugh</u>, 823 F.2d 845, 847 (5th Cir. 1987).  Although Roberson criticizes the State's case on the ground that it was "circumstantial," the Fifth Circuit has held that the fact that the evidence was circumstantial does not mean that it is insufficient or that it will not support a verdict.  <u>U.S. v. Ochoa</u>, 609 F.2d 198, 203 (5th Cir. 1980).

In this case, as the Court of Appeals observed, neither Nancy nor Edward Alonso had ever given Roberson permission to be in their house, and in fact had never seen him.  Roberson's fingerprints were found on a tin box in the bedroom, which box was normally kept on the top shelf of the closet and was thus inaccessible to Roberson; however, it had been thrown on a mattress and the contents scattered.  The state habeas court found Stockton's affidavit to be "wholly incredible," and Roberson has not overcome the presumption of correctness which attaches to this finding.  In addition, Daniel testified at trial and denied any involvement with the burglary.  When viewed in the light most favorable to the verdict, this evidence is sufficient to sustain a conviction for burglary of a habitation.  Roberson's first ground for relief is without merit even had it not been procedurally defaulted.

## II. Ineffective Assistance of Counsel

In his second ground, Roberson identifies 12 bases for his claim of ineffective assistance of counsel. He says that his attorney, Melvin Thompson: (1) failed to conduct an independent investigation; (2) failed to file a motion to shuffle the jury panel; (3) failed to contest the fingerprint evidence; (4) failed to file a motion for expert fingerprint analysis; (5) failed to file a motion for instructed verdict based on the lack of evidence; (6) failed to file a motion for a mistrial; (7) failed to object to the prosecutor's comment on his right not to testify; (8) failed to object to the improper jury argument; (9) failed to keep him apprised of the case as to discovery of new and mitigating evidence; (10) failed to request an instruction for the lesser included offense of criminal trespass being included in the charge; (11) failed to object to an erroneous instruction to the jury concerning Texas parole law; and (12) failed to investigate the validity of the prior conviction used for enhancement during the punishment phase of the trial.

To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief must show that his attorney's performance was deficient and that the deficiency prejudiced him to the point that he was denied a fair trial. Strickland v. Washington, 466 U.S. 668, 678 (1984). This means that the habeas petitioner must establish both that (1) counsel's performance was deficient in that it fell below an objective standard of reasonable competence and (2) the deficient performance so prejudiced the defense that the outcome of the trial was unreliable and there is a reasonable probability that, but for counsel's performance, the result of the trial would have been different. Unless a petitioner makes both showings, he is not entitled to relief. Del Toro v. Quarterman, --- F.3d ---, slip op. no. 06-40043 (5th Cir., September 4, 2007) (not yet published) (available on WESTLAW at 2007 WL 2471898); Lavernia v. Lynaugh, 845 F.2d 493, 498 (5th Cir. 1988). The burden of proving ineffective assistance of counsel is on the petitioner. Hayes v. Maggio, 699 F.2d 198, 201 (5th Cir. 1983).

In addition, the petitioner has the burden of identifying the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. Strickland, 466 U.S. at

7

694; Jones v. Butler, 864 F.2d 348 (5th Cir. 1988), *cert. denied* 490 U.S. 1075 (1989).   General statements and conclusory charges of ineffectiveness will not suffice.   Green v. McGougan, 744 F.2d 1189, 1190 (5th Cir. 1984).   Roberson's claims will be analyzed in light of the applicable standards.

A. Failure to Investigate

Roberson alleges that counsel failed to conduct an independent investigation into the case, but fails to show what such an investigation would have uncovered.   The Fifth Circuit has observed that adequate investigation is a requisite of effective assistance.   Gray v. Lucas, 677 F.2d 1086, 1093 (5th Cir. 1982).   To establish a constitutional violation, however, a defendant must show both a failure to investigate adequately and prejudice arising from that failure.   Gray, 677 F.2d at 1093.   A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. U.S. v. Green, 882 F.2d 999, 1003 (5th Cir. 1989).   Roberson has wholly failed to do so, and so his claim on this point is without merit.

B. Failure to Shuffle the Jury Panel

Roberson complains that counsel failed to file a motion to shuffle the jury panel, but fails to explain why a shuffle would have benefitted him, and thus has not shown any prejudice as a result of counsel's alleged dereliction.   The Fifth Circuit has held that "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsubstantiated by anything else contained in the record, to be of probative evidentiary value."   Ross v. Estelle, 694 F.2d 1008, 1011-12 and n.2 (5th Cir. 1983); *see* Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990).

In Gonzales v. Quarterman, --- F.Supp.2d —, slip op. no. A-06-CA-164-LY (S.D.Tex., March 29, 2007) (unpublished) (available on WESTLAW at 2007 WL 999019), the petitioner David Gonzales complained that counsel was ineffective for failing to seek a jury shuffle.   The Southern District of Texas reasoned as follows:

> Petitioner correctly points out, under Texas law, a defendant is entitled to a shuffle
> of the jury panel upon a timely request [citation omitted].   He does not, however,

explain why a shuffle would have benefitted him.  Accordingly, Gonzales has failed
to show he was prejudiced as a result of his attorney's failure to request a shuffle of
the jury panel.  This claim thus fails.

The same reasoning applies in the present case.  Roberson's claim on this point is without merit.

### C. & D. Failed to Contest the Fingerprint Evidence

These are essentially claims that counsel failed to adequately investigate.  As such, it fails

because Roberson has not shown any basis upon which counsel could have contested the fingerprint

evidence, nor any evidence that the fingerprint on the box was not his.  In fact, Thompson testified

at the second state habeas hearing that prior to trial, Roberson had given Thompson a statement

which placed blame for the burglary on Daniel, and which explained that his fingerprint was on the

box because Daniel had handed it to him.  Under this theory of the case, Thompson had no basis for

challenging the fingerprint, because the question was not whether it was Roberson's fingerprint but

how it got there.  Roberson has failed to show that Thompson acted ineffectively nor that he suffered

any prejudice as a result of this alleged ineffectiveness.  *See, e.g.*, Tenny v. Dretke, 416 F.3d 404,

407 (5th Cir. 2005) (substantial deference is accorded to counsel's performance, and defendant must

overcome presumption that challenged action might be considered sound trial strategy).  Roberson's

claims on these points are without merit.

### E. Failed to seek instructed verdict

Roberson complains that counsel failed to move for an instructed verdict based on lack of

evidence.  Under Texas law, a motion for an instructed verdict is a challenge to the legal sufficiency

of the evidence.  Madden v. State, 799 S.W.2d 683, 686 (Tex.Crim.App. 1990).  However, as set

forth above, the evidence was legally sufficient to support the verdict.  Thus, Roberson has failed

to show that counsel acted ineffectively in failing to move for an instructed verdict, nor that he

suffered any prejudice as a result of this failure.  *See* McCoy v. Lynaugh, 874 F.2d 954, 963 (5th Cir.

1989) (counsel has no obligation to make meritless objections).  This claim is without merit.

F. Failed to file a motion for a mistrial

During closing argument, the following exchange took place (emphasis added):

THE STATE:    What you have to decide in this case is whether the Defendant was in the Alonsos' house on October 24, 2002. That's it. That's what you have to decide. Because if he was in that house, he's guilty of this offense. His prints are on a can that came from the closet, thrown on a bed in a room that looked like a war zone.

What I want to do - my question to you, knowing that the Alonsos didn't know this Defendant, have never met him, did not give him permission to be on this property, as far as they knew, before October 24, 2002, he didn't even exist.

Knowing all that, my question is this: What is his fingerprint doing in the Alonsos' house on that tin can that came out of the closet that had been opened up and poured on a bed in a house that had been rummaged through? **I want the defense to explain to me - Mr Thompson to explain to me and to you what his prints are doing on that can in that house.** See, what I want to show you and point to is this - give me one second. When you look at those - and you've heard the testimony of investigator –

THE COURT:    Excuse me. Before you proceed, counsel approach for just a moment please.

[At the bench, on the record]

THE COURT:    You had no objection to his last line of closing argument? Are you technically[1] deciding not to object to that?

THE DEFENSE:  No, I didn't, Your Honor, and I will object to it.

THE COURT:    It's an improper shifting of the burden. They do not have to explain it. You have to prove your case beyond a reasonable doubt.

THE STATE:    Yes, ma'am.

THE DEFENSE:  I didn't snap to that.

---

[1]At the second habeas hearing, the trial judge said that she had said "tactically," not "technically."

10

[End of bench conference]

THE COURT:          The Court sustains the objection.   The jury will
                    disregard the last portion of State's closing argument.
                    The burden of proof is upon the State and never shifts
                    to the Defendant.  You may proceed.

Roberson complains that Thompson did not move for a mistrial after his objection was sustained and the jury instructed to disregard the prosecutor's comments.  However, the same judge who presided over the trial also conducted the state habeas hearing, and she specifically said that had Thompson moved for a mistrial, she would have denied it.  (Statement of Facts, Hearing on Writ of Habeas Corpus, April 25, 2006, p. 33).  Roberson has thus failed to show that he was harmed from the failure to move for a mistrial.

Nor has Roberson shown that the failure to move for a mistrial adversely impacted his appeal.  As noted above, the trial court gave an instruction to the jury to disregard the State's remark.  Under Texas law, whether a curative instruction is effective depends on the facts of each case.  Swallow v. State, 829 S.W.2d 223, 227 (Tex.Crim.App. 1992); Hardin v. State, 20 S.W.3d 84, 93 (Tex.App.-Texarkana 2000, pet. ref'd).  The question is one of balancing the magnitude of the probable effect of the question on the jury against the probable efficacy of an instruction to disregard.  Hardin, 20 S.W.3d at 93; see also Dinkins v. State, 894 S.W.2d 330, 357 (Tex.Crim.App. 1995) (explaining that only in the most blatant examples will the courts apply the presumption that an instruction to disregard will not cure a comment on failure to testify).

In this case, Roberson has not even alleged, much less shown, that had Thompson moved for a mistrial and been overruled, the appellate court would probably have determined that the curative instruction to disregard was insufficient and that reversal of the conviction was required.  His claim on this point is without merit.

### G. & H. Failed to object to the prosecutor's comment and improper jury argument

As the exchange set out above shows, Thompson did object to the prosecutor's comment, albeit after the trial judge called a bench conference.  This objection was sustained and the jury was instructed to disregard the remark.  Roberson has not shown that he suffered any harm, or that any

11

different result would have ensued, if counsel had objected to the remark before the trial judge called the bench conference.   These claims are without merit.

### I. Failed to keep him apprised of the case

In this claim, Roberson complains of counsel's "failure to keep defendant apprised of case as to discovery of mitigating and new evidence."   He does not say what mitigating or new evidence he is talking about; he offers no facts in support of his assertion that counsel failed to keep him abreast of the case, nor what benefit he would have gained had counsel done so, nor even what he suffered as a result of the alleged dereliction.   Roberson's conclusory assertions do not entitle him to habeas corpus relief.   Ross, 694 F.2d at 1011-12.   His claim on this point is without merit.

### J. Failure to seek an instruction on criminal trespass

Roberson complains that Thompson did not request a jury instruction on the lesser included offense of criminal trespass.   Under Texas law, a trial court must submit an instruction on a lesser included offense to the jury if the lesser included offense is included within the proof necessary to establish the offense charged, and there is some evidence to permit the jury to rationally find that the defendant is guilty only of the lesser offense.   East v. Scott, 55 F.3d 996, 1006 (5th Cir. 1995).   This means that some evidence must exist in the record that if the defendant is guilty, he is guilty only of the lesser offense.   Aguilar v. Dretke, 428 F.3d 526, 531 n.2 (5th Cir. 2005); *see also*   Dowthitt v. Johnson, 230 F.3d 733, 757 (5th Cir. 2000) (noting that it is not enough that a jury disbelieve crucial evidence pertaining tp the greater offense; rather, there must be some evidence directly germane to the lesser included offense for the factfinder to consider before an instruction on the lesser included offense is warranted).

In this case, while it is true that criminal trespass is a lesser included offense of burglary, Roberson offers nothing to show that a rational trier of fact could have found him guilty only of criminal trespass.   To find him guilty only of criminal trespass, the jury would have to conclude that Roberson broke into the house and left his fingerprints on a tin box which had been opened and left on the bed in a ransacked room, but had no intent to commit a theft, or did not attempt to commit

12

or actually commit a theft.  *See* Tex. Penal Code art. 30.02 (burglary of a habitation involves entry into a habitation without the owner's consent with intent to commit a theft, and commits or attempts to commit a theft); art. 30.05 (criminal trespass involves entering into or remaining on the property of another without effective consent, and notice that the entry was forbidden or received notice to depart, but failed to do so).  No evidence appears in the record, nor does Roberson point to any, which tends to show that if he was guilty, he was guilty only of criminal trespass.  Consequently, Roberson has failed to show that counsel rendered ineffective assistance in failing to request an instruction on criminal trespass, and his claim on this point is without merit.

K. Failure to object to instruction on parole

Roberson complains that Thompson failed to object to an instruction in the jury charge concerning parole law.  This charge is statutorily required under Tex. Code Crim. Pro. art. 37.07, sec. 4, and the charge given by the trial court tracked the language of the statute.  Roberson has failed to show any basis upon which Thompson could have objected to the giving of an instruction which is required by statute.  His claim on this point is without merit.

L. Failure to investigate invalidity of prior conviction used for enhancement

Finally, Roberson says that Thompson failed to investigate the validity of the prior conviction used for enhancement purposes at the punishment phase of the trial.  The state records indicate that Roberson had nine prior convictions which were offered into evidence.  (Statement of Facts, vol. 7, pp. 21-27).  Roberson fails to state which of these convictions he believes to be invalid, or provide any reason for such belief.  He has not shown what an investigation would have revealed or how this would have made a difference in his case.  His claim on this point is without merit.

III. Disproportionate Sentence

Roberson complains that the life sentence which he received, which was made to run consecutively with his prior sentences, was disproportionate to the offense.  He also appears to assert that the record is devoid of any directive from the jury to stack the sentence, and that there is no "cumulation order from the State."

In <u>Smallwood v. Johnson</u>, 73 F.3d 1343 (5th Cir. 1996), the petitioner Simon Smallwood was arrested for shoplifting three packages of meat, with a total value of $27.64.  He had two prior theft convictions, and so the charge was enhanced to a third-degree felony.  The indictment contained two additional paragraphs alleging that Smallwood had two prior felony convictions, including burglary of a habitation and possession of a controlled substance.  These prior convictions enhanced Smallwood's sentencing range to 25 to 99 years or life in prison.  At the punishment phase of the trial, the jury was informed that Smallwood in fact had nine prior felony convictions, and he was sentenced to 50 years in prison.  Smallwood argued in his federal habeas corpus petition that this sentence was grossly disproportionate to the offense of misdemeanor theft, but the Fifth Circuit disagreed and affirmed the denial of his habeas corpus petition.

In so doing, the Court relied on <u>McGruder v. Puckett</u>, 954 F.2d 313 (5th Cir. 1992).  In <u>McGruder</u>, the Fifth Circuit reviewed the Supreme Court's decisions in <u>Harmelin v. Michigan</u>, 501 U.S. 957, 111 S.Ct. 2680 (1991), and <u>Solem v. Helm</u>, 463 U.S. 277, 103 S.Ct. 3001 (1983).  In <u>Solem</u>, the Supreme Court had held that a sentence of life imprisonment without parole for writing a check with insufficient funds, enhanced by prior convictions for third-degree burglary, false pretenses, grand larceny, and driving while intoxicated, violated the Eighth Amendment.  The Court adopted a three-part test for use in a proportionality analysis, which was that the lower courts were to examine the gravity of the offense relative to the harshness of the penalty, the sentences imposed for other crimes in the jurisdiction, and the sentences imposed for the same crime in other jurisdictions.  <u>Solem</u>, 463 U.S. at 292, 103 S.Ct. at 3010.

However, the Fifth Circuit stated that <u>Harmelin</u> essentially overruled <u>Solem</u>, although the three-part analysis would still be used "in the rare case when a threshold comparison of the crime committed to the sentence imposed leads to an inference of gross disproportionality."  In <u>Harmelin</u>, the petitioner contended that a sentence of life imprisonment without parole for possession of 650 grams of cocaine was not grossly disproportionate to the crime.  <u>Harmelin</u>, 111 S.Ct. at 2707. The Supreme Court disagreed and affirmed the sentence.

14

The petitioner in <u>McGruder</u> was sentenced to life imprisonment for auto burglary, enhanced by previous convictions for armed robbery, burglary, escape, and auto burglary, and the Fifth Circuit held that this was not grossly disproportionate to the offense. <u>McGruder</u>, 954 F.2d at 317; *see* <u>Rummel v. Estelle</u>, 445 U.S. 263, 100 S.Ct. 1133 (1980) (prisoner who received life sentence for obtaining $120.75 by false pretenses, enhanced by convictions for passing a worthless check and passing a forged check, not grossly disproportionate to offense).

In this case, Roberson was convicted of burglary of a habitation, a first-degree felony, with eight prior convictions for burglary of a habitation as well as a conviction for burglary of a building. He has wholly failed to show that a life sentence is grossly disproportionate to the offense. *See* <u>McGruder</u>, 954 F.2d at 316 (noting that under habitual offender statutes, a sentence is imposed to reflect the seriousness of the most recent offense, not as it stands alone, but in light of the prior offenses). His claim on this point is without merit.

Roberson also appears to challenge the imposition of a consecutive sentence, saying that there was no order from the jury to impose such a sentence. He overlooks the fact that under Texas law, it is the trial judge, not the jury, who orders consecutive or concurrent sentences. <u>Barrow v. State</u>, 207 S.W.3d 377, 380 (Tex.Crim.App. 2006); Tex. Code Crim. Pro. art. 42.08(a). The judgment in this case contains a cumulation order. This claim is without merit.

### IV. The State's Closing Argument

In his final ground for relief, Roberson complains of the State's closing argument, referenced above, which challenged defense counsel to explain what Roberson's fingerprints were doing on the can in the Alonsos' house. He says that the trial judge overruled the objection, saying that it was argument; however, the record shows that in fact, the objection was sustained and the jury was instructed to disregard the remark. (Statement of Facts, vol. VI, p. 87).

The Fifth Circuit has stated that in federal habeas actions, improper jury argument by the state does not present a claim of constitutional magnitude unless it is so prejudicial that the petitioner's state court trial was rendered fundamentally unfair within the meaning of the Fourteenth

15

Amendment's Due Process Clause. Felde v. Blackburn, 795 F.2d 400, 403 (5th Cir. 1986). To establish that a prosecutor's remarks are so inflammatory as to prejudice the substantial rights of a defendant, the petitioner must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that, in probability, but for the remarks no conviction would have occurred. Felde, 795 F.2d at 403, citing Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir. 1983).

The Supreme Court has stated that a prosecutor's remarks must be more than undesirable or even universally condemnable before reversal is warranted. Instead, the prosecutor's remarks must infect the trial with such unfairness as to make the resulting conviction a denial of due process. Darden v. Wainwright, 477 U.S. 168, 181 (1986); see also Bell v. Lynaugh, 828 F.2d 1085, 1095 (5th Cir.), cert. denied 484 U.S. 933 (1987); Drew v. Collins, 964 F.2d 411, 417 (5th Cir. 1992).

In this case, there is no doubt that the prosecutor's remark was improper. However, Roberson has failed to show that this remark infected his trial with such unfairness as to make his conviction a denial of due process. As noted above, an objection to the remark was sustained and the jury was instructed to disregard the prosecutor's remark.

In Sammons v. Dretke, 82 Fed.Appx. 329 (5th Cir., October 2, 2003) (not selected for publication in the Federal Reporter) (available on WESTLAW at 2003 WL 22259488), the petitioner Leon Sammons argued that the prosecutor commented on his failure to testify. The Fifth Circuit held that the comment must be viewed in the context of the trial, and that reversal is not warranted unless the improper comment "had a clear effect on the jury," citing United States v. Montoya-Ortiz, 7 F.3d 1171, 1779 (5th Cir. 1993). The Court went on to state that curative instructions are considered in analyzing whether an improper remark constitutes reversible error, and noted that "juries are presumed to follow the instructions of the court." Zafiro v. United States, 506 U.S. 534, 540-41, 113 S.Ct. 933 (1993). Roberson has not shown that the improper comment had a clear effect on the jury, nor has he overcome the presumption that the jury followed the trial court's instruction and disregarded the improper comment. His claim on this point is without merit.

16

<u>Conclusion</u>

An application for the writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim resulted in a decision which was contrary to or involved an unreasonable interpretation of clearly established federal law, as set out by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. §2254(d).

The Court has carefully examined the habeas corpus application filed by the Petitioner Sammie Roberson, as well as the answer filed by the Respondent, the state court records, and all other documents, pleadings, and records in the case.  Upon such consideration, the Court has determined that the Petitioner has failed to show that he is entitled to the issuance of a writ of habeas corpus or to the relief sought in his application for such writ.  Absent a showing that the petitioner is in custody in violation of the Constitution, laws, or treaties of the United States, the relief sought cannot be granted.  28 U.S.C. §2241(c)(3).  It is accordingly

ORDERED that the above-styled application for the writ of habeas corpus be and hereby is DISMISSED with prejudice.  It is further

ORDERED that any and all other motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **24** day of **September, 2007.**

JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE